**IN THE COURT OF APPEALS OF IOWA**

No. 21-0521
Filed August 4, 2021

**IN THE INTEREST OF H.P.,**
**Minor Child,**

**T.C., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Clinton County, Kimberly K.

Shepherd, District Associate Judge.

A mother appeals the termination of her parental rights to her one-year-old

son. **AFFIRMED.**

Victoria D. Noel of The Noel Law Firm, P.C., Clinton, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant

Attorney General, for appellee State.

J. David Zimmerman, Clinton, attorney and guardian ad litem for minor

child.

Considered by Tabor, P.J., and Mullins and May, JJ.

**TABOR, Presiding Judge.**

A mother, Tabitha, appeals a juvenile court order terminating her parental rights to H.P., her one-year old son. Tabitha challenges whether the State presented clear and convincing evidence to support the statutory grounds for termination. Because of Tabitha's continued issues with sobriety and her avoidance of mental-health services, we affirm.

## I.   Facts and Prior Proceedings

H.P. was born in March 2020 to Tabitha and Travis. Tabitha and H.P. tested negative for all substances at the hospital. Still, a Department of Human Services (DHS) social worker made contact with Tabitha the day after H.P.'s birth because Tabitha's substance-abuse and mental-health history led to termination of her parental rights for two other children. Tabitha reported she had received prenatal care, was sober, and prepared to care for this child.

The DHS and Tabitha developed a safety plan before Tabitha's discharge. The safety plan required Tabitha to remain drug free, undergo drug testing, attend counseling, and provide a drug-free home for H.P. When DHS made a home visit, the worker reported no concerns. Likewise, Tabitha's probation officer provided a positive report to the DHS at the end of March. Nonetheless, the DHS requested a child in need of assistance (CINA) assessment, citing Tabitha's history and two prior terminations. A guardian ad litem was appointed for H.P.

The court adjudicated H.P. as a CINA in May 2020. The court allowed H.P. to stay with Tabitha, subject to the safety plan and continued DHS supervision. But Tabitha failed a drug test in July. The court then ordered H.P. to live with a relative. H.P. continues to reside with his paternal aunt, Ashley, and her husband.

At first, Ashley allowed Tabitha to visit H.P. at her home.  But she disallowed visits at her house after Tabitha and Travis had a physical altercation.

Tabitha initially believed she did not need inpatient treatment and that she could remain sober without help.  But she was still using methamphetamine in November 2020.  Tabitha had done a two-day detox but discontinued treatment.  She also began addressing her mental-health issues through medication but not therapy.

Eventually, Tabitha realized she needed professional intervention to address her substance-abuse issues.  In December, Tabitha went to Heart of Iowa for substance-abuse treatment, but she was discharged for aggressive behavior after only two weeks.  She then entered the Hope House program in Ottumwa in late December.  That program allowed H.P. to stay overnight with Tabitha.  A Family Centered Services (FCS) report dated January 2021 detailed her progress in treatment.  The FCS worker noted Tabitha made good use of resources and the support system available.   Tabitha expressed her desire for longer visits with H.P.  Still, the DHS recommended termination of parental rights in its January 2021 report to the court.

In another setback, Tabitha failed a drug test in February and was dismissed from the Hope House program.   Tabitha denied using illegal substances.  After her dismissal from Hope House, she began inpatient treatment at Hightower.   Tabitha continued to have visits with H.P.   Her treatment at Hightower was her longest documented period of sobriety.  Despite that progress, the DHS still recommended termination in its March 2021 report to the court.  The report recognized: "Tabitha has skills to take care of her son but she becomes

overwhelmed easily."  The report also noted Tabitha had been sober for the past two months, but she had not had custody of H.P. for the past eight months.

The court held a combined permanency and termination hearing in April 2021.  A Hightower substance-abuse counselor testified about Tabitha's continued growth and dedication, including regularly chairing a twelve-step meeting.  Yet the counselor believed Tabitha lacked a sufficient support system to live independently.  The counselor discussed Tabitha's relapse from a month earlier. The counselor noted relapses were not unusual for participants in her program. The counselor testified she would be comfortable with H.P. residing with Tabitha at Hightower, which has the resources and facilities for children to reside with parents undergoing treatment.

The DHS worker also testified about Tabitha's relapse.  The worker believed Tabitha was "not taking ownership" of the situation by claiming to have tested positive for methamphetamine because she drank from her friend's drink.  The worker also noted Tabitha was inconsistent in addressing her mental health and had recently alluded to considering self-harm if H.P. was not returned to her care. The social worker initially wanted to give Tabitha more time, but was uncertain whether Tabitha could provide safe care for the long term.  The child's guardian ad litem supported termination, seeing "no clear path" that the child could be returned to his parents.

The court found clear and convincing evidence to support termination under Iowa Code section 232.116(1), paragraphs (d), (e), (g), (h), (i), and (*l*) (2021). Tabitha appeals.[1]

## II. Standard of Review

We review proceedings terminating parental rights de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). The State must prove its allegations by clear and convincing evidence. *In re L.H.*, 949 N.W.2d 268, 270 (Iowa Ct. App. 2020). "Clear and convincing" means we have "no serious or substantial doubts" about the accuracy of the legal conclusions drawn from the facts. *Id.*

## III. Analysis

When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the order on any ground supported by the record. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We opt today to focus on section 232.116(1)(g). To terminate rights under 232.116(1)(g), the court must find four elements:

> 1. The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> 2. The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family or a court of competent jurisdiction in another state has entered an order involuntarily terminating parental rights with respect to another child who is a member of the same family.
> 3. There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.
> 4. There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.

---

[1] Travis does not appeal the termination of his parental rights.

Elements one and two are not disputed: H.P. was adjudicated CINA and Tabitha's parental rights to H.P's elder siblings had been terminated. At issue are the third and fourth elements.

On the third element, while Tabitha may now be willing to participate in substance-abuse treatment, she has shown an inability to respond to those services in a way that would correct the situation that led to H.P.'s removal. Tabitha has been engaged in these services for only two of the twelve months the CINA case has been pending. And she was unable to remain clean for those two months, relapsing in late March 2021. True, the Hightower counselor saw promise in Tabitha's commitment. But the counselor acknowledged Tabitha had a long way to go.

On the fourth element, the question is will Tabitha continue to respond to services? When "considering the impact of a drug addiction, we must consider the treatment history of the parent to gauge the likelihood the parent will be in a position to parent the child in the foreseeable future." *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998). This is Tabitha's third termination. We cannot turn a blind eye to her inability to sustain progress in those cases. The DHS has offered her services for many years. Like the juvenile court, we do not find that an additional period of rehabilitation will correct the situation.

In her petition on appeal, Tabitha makes passing reference to needing additional time to reunify with H.P. Although she does not argue this point in detail, we nevertheless address it. "A parent does not have an unlimited amount of time to correct deficiencies." *In re D.L.-F.*, No. 10-1345, 2010 WL 3894575, at *3 (Iowa Ct. App. Oct. 6, 2010). We view termination proceedings with a sense of urgency.

*See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). For the court to order a six-month continuation of the child's placement, it must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). We cannot find the need for removal will no longer exist at the end of six months, and we agree with the juvenile court that "based on the history of substance abuse and the mental health concerns of both the mother and the father, it remains questionable at this time whether the parents can care for themselves long-term, let alone meet the ever-increasing and ever-changing needs of their young child." Thus, we affirm the order of the juvenile court.

**AFFIRMED.**